**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELVIN GEOVANY RAMOS-ACOSTA, | Case No. 2:26-cv-05655-ACCV |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| FERETI SEMAIA, *et al.*, | |
| Respondents. | |

## I.    RULING

On May 27, 2026, Petitioner Melvin Geovany Ramos-Acosta ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and the Administrative Procedure Act ("APA").  (Dkt. 1 at 12–24.)  Consistent with recent decisions by this District and others, the Court finds that Petitioner's detention, without meaningful pre-deprivation process, violates due process.  For the reasons stated herein, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner Melvin Geovany Ramos-Acosta (A# 220-029-841) from custody immediately.

## II.   FACTS AND PROCEDURAL HISTORY

Petitioner is a 48-year-old native and citizen of Honduras.  (Dkt. 1 at 2, 6.) Petitioner has lived in the United States for nearly 22 years.  (*Id.* at 6.)  Petitioner leads a congregation of approximately 20 to 30 members as a pastor at a church in Long Beach, California and has deep and longstanding ties to the community.  (*Id.*) Petitioner lives and works in Long Beach.  (*Id.*)  Petitioner has a pending application for a U nonimmigrant visa.  (*Id.*)  The United States Citizenship and Immigration Services issued a Form I-797C determining that Petitioner's Form I-918, Supplement A petition for U nonimmigrant status benefiting Petitioner is bona fide, and that favorable exercise of discretion to receive employment authorization and deferred action is warranted.  (*Id.*; Dkt. 1-3.)  Petitioner has work authorization valid through January 14, 2029.  (Dkt. 1 at 6; Dkt. 1-4.)  As documented in Petitioner's Form I-213, Petitioner has no criminal convictions.  (Dkt. 1 at 6.)

According to Petitioner, he was detained by Immigration and Customs Enforcement ("ICE") on December 15, 2025, while at a Home Depot in Carson, California.  (*Id.* at 7.)  While an immigration enforcement operation was occurring, an ICE agent observed Petitioner and stopped him even though Petitioner was not engaging in unlawful activity nor did the agent have reason to believe Petitioner was violating the law.  (*Id.*)  The agent asked Petitioner's country of citizenship.  (*Id.*)  After Petitioner responded that he is from Honduras, the agent asked if Petitioner had any documents.  (*Id.*)  Petitioner answered he had a work permit.  (*Id.*)  The agent proceeded with questioning, including asking Petitioner how he entered the country. (*Id.*)  The Form I-213 prepared by the agent states that Petitioner admitted entering the United States without inspection.  (*Id.*)

Petitioner alleges he was committing no offense and there was no indication that he was unlawfully present in the United States at the time of his stop and arrest.  (*Id.*) Petitioner alleges he is lawfully present as he has been granted deferred action in

2

connection with his pending U visa application and held a valid Employment Authorization Document.  (*Id.*)

Petitioner was arrested and placed in removal proceedings.  (*Id.* at 7–8.)

On February 11, 2026, an immigration judge ("IJ") denied release on bond based on flight risk.  (*Id.* at 8.)  Petitioner alleges that the IJ made this determination based on Petitioner's failure to appear twice in a misdemeanor case from more than a decade ago.  (*Id.*)  The IJ also relied on observations that Petitioner did not recognize some of the names or details of recommendation letters submitted on behalf of Petitioner and that Petitioner's sponsor resides in Virginia.  (*Id.*)

On February 13, 2013, Petitioner had an allegation of public intoxication under Cal. Penal Code § 647(f).  (*Id.*)  According to Petitioner, the offense is a misdemeanor.  (*Id.*)  Petitioner was cited for failing to appear for the public intoxication offense initially due to a confusion he had but later appeared and was offered diversion.  (*Id.* at 9.)  On June 27, 2014, after Petitioner completed diversion, the matter was dismissed.  (*Id.*)  Petitioner alleges he was never convicted.  (*Id.*)

In that same 2013 incident, Petitioner was charged under California Penal Code § 537(a)(1) for defrauding an innkeeper after he and a friend were unable to pay for their meal at a restaurant.  (*Id.*)  Petitioner alleges that after law enforcement was contacted, he stayed and accepted responsibility for the bill.  (*Id.*)  After the case was completed in 2014, Petitioner asserts he has had no further involvement with the criminal justice system and has lived a law-abiding life as a pastor and community member in Long Beach.  (*Id.* 9–10.)

Petitioner's sponsor is his nephew who resides in Virginia, who he alleges will help ensure Petitioner's compliance with immigration obligations.  (*Id.* at 10.)

Petitioner is currently in ICE custody at the Adelanto ICE Processing Center in Adelanto, California.  (*Id.* at 2, 4, 6.)

In his May 27, 2026 Petition, Petitioner brings seven causes of action:

3

(1) unlawful warrantless seizure without reasonable suspicion in violation of the Fourth Amendment; (2) detention without reasonable suspicion in violation of the APA and 8 C.F.R. § 287.8(b)(2); (3) warrantless arrest without probable cause of likelihood of escape in violation of the APA and 8 U.S.C. § 1357(a)(2); (4) unlawful detention and constitutionally defective custody determination in violation of his procedural due process rights; (5) detention not reasonably related to any legitimate purpose in violation of substantive due process rights; (6) detention unauthorized under *Matter of Patel*, Dec. 666, 666–67 (BIA 1976); (7) failure to properly apply *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), was an abuse of discretion; and (8) failure to set a reasonable bond amount was an abuse of discretion.  (*Id.* at 12–24.)  Among the relief requested, Petitioner requests that the Court issue a writ of habeas corpus requiring Petitioner's immediate release.  (*Id.* at 25.)

On May 27, 2026, Petitioner voluntarily consented to the assigned magistrate judge's jurisdiction under 28 U.S.C. § 636(c).  (Dkt. 3.)  The action was fully consented to proceed before the magistrate judge on June 2, 2026.  (Dkt. 6.)

Respondents filed their Answer to the Petition on June 2, 2026.  (Dkt. 7.)  They assert that the Court does not have jurisdiction to review the IJ's bond decision and lacks jurisdiction to review Petitioner's claims under 8 U.S.C. § 1252.  (*Id.* at 4–7.)  Respondents also argue that Petitioner has failed to exhaust administrative remedies.  (*Id.* at 7–8.)  As to Petitioner's due process claims, Respondents argue that Petitioner does not identify any violation or error that justifies habeas relief.  (*Id.* at 9–10.)

Petitioner filed his reply on June 6, 2026, arguing that the Court has jurisdiction, that administrative exhaustion is not required, that Respondents fail to respond to the merits of Petitioner's Fourth Amendment claims, and that Petitioner's due process rights were violated.  (Dkt. 8 at 4–15.)  In the Reply, Petitioner restates his request that this Court grant his Petition and order his immediate release.  (*Id.* at 15.)

On June 24, 2026, the Court requested a status update regarding Petitioner's

4

whereabouts as Petitioner did not appear in the ICE Online Detainee Locator System. (Dkt. 10.)  On June 27, 2026, Petitioner's counsel notified the Court that Petitioner remains in custody at Adelanto ICE Processing Center and that Petitioner was scheduled for a custody redetermination hearing before the Immigration Court on June 26, 2026, at 8:00 a.m.  (Dkt. 11 at 1–2.)  The Court ordered the parties to file a status report no later than the close of business on Tuesday, June 30, 2026, as to the outcome of Petitioner's custody re-determination hearing that occurred on June 26, 2026.  (Dkt. 12.)  The same day, the parties filed a joint status report notifying the Court that Petitioner was denied bond and remains detained.  (Dkt. 13 at 1.)

## III.    LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV.    DISCUSSION

Petitioner makes multiple claims against Respondents.  The Court begins with addressing jurisdiction before analyzing Petitioner's procedural due process claim, as success on that claim would offer him the most significant relief, which is an order for release from custody.  For the below reasons, the Court concludes that Petitioner's detention violates due process.

### A.    The Court Has Jurisdiction.

The Court first considers whether it has jurisdiction to decide the Petition. Respondents raise multiple arguments regarding jurisdiction.  Respondents argue that

the Court does not have jurisdiction to review the IJ's bond decision.  (Dkt. 7 at 4.) Respondents also argue that 8 U.S.C. § 1252(b)(9) and (g) deprive the Court of jurisdiction over Petitioner's claims.  (Dkt. 7 at 5–6.)  The Court disagrees and addresses each in turn, below.

### 1. 8 U.S.C. § 1226(e)

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  Thus, "§ 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release."  *Jennings v. Rodriguez*, 583 U.S. 281, 295, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) (citation modified). However, "§ 1226(e) did not strip federal courts of traditional habeas jurisdiction." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024).  Instead, it "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law."  *Id.*; *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017).  Therefore, while the Court may not review the IJ's discretionary bond determination, district courts have jurisdiction under 28 U.S.C. § 2241 "to consider any error of law in [an immigrant's] agency proceedings, including any claimed due process violation."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *overruled on other grounds by Rodriguez Diaz*, 53 F.4th at 1209 ("Although § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law."); *see, e.g.*, *Martinez*, 124 F.4th at 784 (finding IJ's "'dangerousness' determination . . . is reviewable . . . for an abuse of discretion").

While Petitioner challenges the IJ's bond determination, he also challenges the constitutionality and sufficiency of the process by which he was arrested and detained.

(Dkt 1 at 12–14, 17–20.)  As such, this Court has habeas jurisdiction under 28 U.S.C. § 2241 to consider the constitutional claims.  *See Hernandez*, 872 F.3d at 987.

### 2.  8 U.S.C. § 1252(b)(9)

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Respondents argue that § 1252(b)(9) taken in conjunction with § 1252(a)(5)—which states "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)"—precludes review of any removal-related activity and claims arising from deportation proceedings unless it is brought through the petition for review process in the court of appeals.  (Dkt. 7 at 6–7.)  The Supreme Court, however, has held that § 1252(b)(9) does not present a jurisdictional bar in a case involving a noncitizen's challenge to his continued detention without a bond hearing pending his removal from the United States. *Jennings*, 583 U.S. at 291–95.  The Court found that such an expansive view of "arising from" would lead to "staggering results," effectively making any claims of prolonged detention unreviewable. *Id.* at 293; *see also Luciano v. Noem*, No. 5:25-CV-03156-RGK-MAA, 2025 WL 3771427, at *2 (C.D. Cal. Dec. 19, 2025).

/ / /

7

### 3.      8 U.S.C. § 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Respondents argue that Petitioner's claims stem from his detention during removal proceedings, detention that arises from the government's decision to "commence proceedings" against him, so the Court does not have jurisdiction to hear his claims.  (Dkt. 7 at 5.)  Respondents argue that this jurisdictional bar applies to "challenges to the *method* by which" DHS commences removal proceedings.  (*Id.* (emphasis in original).)

The Court disagrees.  The "arising from" language in § 1252(g) only applies to the "three specific actions" in 1252(b)(9), namely, the Attorney decision's decision to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders. *Jennings*, 583 U.S. at 294 (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999)); 8 U.S.C. § 1252(b)(9). The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."  *Reno*, 525 U.S. at 482.  Petitioner challenges the decision to hold him in detention without process, including a warrant or notice before he was detained, which is a separate action from "commenc[ing] proceedings." Therefore, § 1252(g) is not a jurisdictional bar.

/ / /

8

**B.    Petitioner's Detention Violates Due Process.**

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004).  A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief. *Davis*, 384 F.3d at 638.

Petitioner argues his stop, arrest, and detention without any process violates his procedural due process rights under the Fifth Amendment.  (Dkt. 1 at 17–18.) Respondents assert that Petitioner fails to identify any due process violation justifying habeas relief and that Petitioner was granted a bond hearing.  (Dkt. 7 at 9–10.) Respondents contend that Petitioner takes issue with the merits of the IJ's bond decision and that is an insufficient basis for a due process violation.  (*Id.* at 9.)

### 1.    Protected Liberty Interest

Though the liberty interests of U.S. citizens compared to noncitizens "are not coextensive," the Fifth Amendment nonetheless "entitles [noncitizens] to due process of law in deportation proceedings." *Rodriguez Diaz*, 53 F.4th at 1205–06 (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).  Many courts in this Circuit have affirmed the principle that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *See, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases);

9

*Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025). This principle extends to those who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents. *See, e.g.*, *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free). Respondents were aware of Petitioner's presence given his Form I-918, Supplement A petition was determined by the Government to be bona fide, and he received employment authorization and deferred action. Furthermore, Petitioner gained liberty interests when the government granted him deferred action status. *See Antonio Cervantes Vargas (A# XXX-XX0-366), Petitioner, v. Markwayne Mullin, et al., Respondents.*, No. 1:26-CV-04467-DC-SCR, 2026 WL 1907198, at *5 (E.D. Cal. July 2, 2026) (citing *Rafael Reyes Servin, Petitioner, v. Fereti Semaia, et al., Respondents.*, No. 5:26-CV-02745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) ("[O]nce Petitioner was granted deferred action, and permitted to remain free from detention, he acquired a liberty interest in remaining released from custody.")). Respondents' only argument against Petitioner's procedural due process claim is that Petitioner's claims challenging the merits of the IJ's bond determination does not support a procedural due process claim. The Court understands Petitioner's procedural due process claim differently than Respondents. Petitioner argues that his detention is unlawful because he was not given any pre-deprivation process. Respondents' arguments regarding the IJ's post-detention bond determination and jurisdiction are not responsive to Petitioner's procedural due process claim.

Accordingly, Petitioner—having lived in the United States for more than two decades, serving as a pastor in his community, having valid work authorization, paying taxes, and notably living with a grant of deferred action—has a vested liberty interest in remaining free from detention.

### 2. *Mathews* Test

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (cleaned up). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The first *Mathews* factor is Petitioner's private interest. Petitioner has spent over two decades living with his family in the United States, has deferred action based on his pending U-visa application, worked with a valid work permit, served as a pastor in his local community, and built community ties. (Dkt. 1 at 4, 6, 9–10.) Many decisions in this District have found similar facts to indicate substantial private interest. *See Meneses*, 811 F. Supp. at 1163 (collecting cases); *see also Padilla v. Bowen*, No. 2:25-CV-10780-CAS-SK, 2025 WL 3251368, at *6 (C.D. Cal. Nov. 21, 2025) ("That Petitioner is deprived of his right to live with his family and to work underscores Petitioner's 'weighty' liberty interest in remaining out of custody."); *Abdeltawab v. Armant*, No. EDCV 26-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (Petitioner having spent nearly seven years out of immigration custody in the United States, living with his family, working, and building community ties is a private interest at stake.); *Antonio Vargas Cervantes*, 2026 WL 1907198, at *5. Accordingly, the Court finds that the private interest at stake is significant here.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. "Civil immigration detention is permissible only to prevent

flight or protect against danger to the community." *See Pinchi*, 792 F. Supp. 3d at 1035. As such, the risk of erroneous deprivation is high absent a pre-deprivation hearing to ensure detention serves those permissible purposes. *See id.* Prior to detention, Petitioner was not afforded any process to determine whether his detention in fact advances either purpose. Here, given that Petitioner was granted deferred action, which occurred well after Petitioner's arrests for misdemeanors more than a decade ago, the risk of an erroneous deprivation is high as Respondents provided no pre-deprivation process to Petitioner to determine whether his deferred action should be revoked. *See Antonio Vargas Cervantes,* 2026 WL 1907198, at *6.

Respondents argue that Petitioner acknowledges he was provided with a post-detention bond hearing, and in that hearing, the IJ determined he was a flight risk. (Dkt. 7 at 9.) Notably, the bond hearing only occurred after a court in this District ordered Petitioner be provided with a bond hearing. (Dkt. 1-1.) As previously discussed, Respondents do not provide any argument rebutting Petitioner's claim that he was granted deferred action. (*See generally* Dkt. 7.) Even if Respondents were to argue that the Government has discretion to terminate deferred action, they cannot show that Petitioner was given any pre-deprivation hearing or notice regarding the revocation of his deferred action status. Accordingly, the Court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial.

The final *Mathews* factor is the government's interest. The Government's interest in detaining individuals like Petitioner without a hearing is "low." *See Padilla*, 2025 WL 3251368, at *7; *Kharitonova*, 2026 WL 531441, at *3. Respondents' argument does not support otherwise as it focuses on the IJ's bond determination. As such, the Government has not shown or attempted to substantively argue that "Petitioner's detention serves either to prevent flight or a danger to the community." *See Padilla*, 2025 WL 3251368, at *7 (citing *Hernandez*, 872 F.3d at 994). Nor are "the cost of providing such protections . . . fiscally or administratively onerous."

12

*Pinchi*, 792 F. Supp. 3d at 1036.  To the extent Respondents are relying on the IJ's flight determination, the IJ's determination on February 11, 2026, occurred almost two months after Petitioner's detention and the hearing occurred because it was ordered by a Court in this District.  Accordingly, the Court finds that the Government's interest in detaining Petitioner without a hearing is low.

After considering all three *Mathews* factors, the Court concludes that Petitioner is entitled to release on procedural due process grounds.  Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims.

## V.    CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS Respondents:

(1)    to release Petitioner Melvin Geovany Ramos-Acosta (A# 220-029-841) forthwith under the same conditions as prior to his detention;

(2)    to return all property to Petitioner that was confiscated from him when he was arrested and processed into detention;

(3)    to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4)    are notified that any future enforcement actions after Petitioner's release must comply with Due Process requirements, including that Respondents shall not re-detain Petitioner without providing him with notice and pre-detention hearing before a neutral decisionmaker.

DATED: July 13, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge

13